TELITHA MUNRO

*v.*

SAMUEL M. BOWLES.

*Opinion filed October 19, 1900.*

DEEDS—*what will not render delivery to third party ineffectual.* Delivery of a deed by the grantor to a third party, for the grantee, is not rendered ineffectual because the third party, for safe keeping, places the deed, with another paper of her own, in a trunk belonging to the grantor, to which he carried the key.

MAGRUDER, J., dissenting.

APPEAL from the Circuit Court of Rock Island county; the Hon. W. H. GEST, Judge, presiding.

MCENIRY & MCENIRY, and SWEENEY & WALKER, for appellant.

W. J. ENTRIKEN, and J. T. KENWORTHY, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

In an action of ejectment brought by the appellant, Telitha Munro, against the appellee, Samuel M. Bowles, in the court below, to recover a farm of three hundred and twenty acres in Rock Island county, there was a verdict of not guilty and a judgment for defendant, the appellee. On this her appeal the appellant contends that upon the evidence the verdict and judgment should have been for the plaintiff, and that the court erred in the instructions given to the jury.

The appellant claimed title as the only heir-at-law of her father, Samuel Bowles, deceased. The appellee claimed title through a warranty deed from said Samuel Bowles. The evidence tended to prove that the appellee was the illegitimate son of said Samuel Bowles, who, as it was shown, recognized appellee and brought him up as his own son. He was a man of wealth, and it clearly

appeared that it had long been his avowed purpose to give the farm to appellee. On June 29, 1893, he called on his attorney at Moline, Illinois, and told him of his purpose to make such gift and requested him to prepare a deed to his said son for the land. The attorney drew the deed as requested, the consideration expressed being natural love and affection and one dollar. The deed was read to, approved and signed by Samuel Bowles, who took it away with him to a notary public, before whom it was duly acknowledged. The only question in the case is, whether or not there was any effective delivery of the deed. When the deed had been prepared and before the grantor took it from the office of his attorney, the attorney asked him if he was going to give it (the deed) to his son, to which Bowles replied, "Not during my lifetime." The attorney then said to him, "Do you know that if you should keep this deed in your possession and it should be found among your papers after your death it would be worthless?" Bowles replied that he did not know that. His attorney then informed him that such was the law, and advised him to deliver the deed to a third person beyond his recall, with instructions to such person to deliver it, after the grantor's death, to the grantee. We are satisfied that he undertook to carry out the instructions of his attorney, and, as found by the jury, intended to make, and did make, an effectual delivery of the deed as an escrow. He was living alone, except that he had a housekeeper. On the same day that the deed was drawn and executed he returned home and told his housekeeper, Miss Witherspoon, of his attorney's instructions for him to make a delivery of the deed. She testified, in substance: "He said he would give the deed to me to keep, and at his death that I should give it to Sam, (the appellee,) and I told him I would. He then handed me the deed and I took it. It was in an envelope, with Sam's name on the back of the envelope. I asked him what I could do with it, and he told me I could keep it

in his trunk, and he handed me the key. The trunk was locked. I went into his room and put the deed in the right-hand corner of the trunk with a sewing machine receipt which I had there. The trunk was the safest place in the house." A few months after the deed was made Samuel Bowles fell unconscious while walking up the steps of his residence and expired almost immediately after having been taken to his room. After he was dead Miss Witherspoon, in whose hands the deed had been placed by Mr. Bowles, took from his vest pocket the key to his trunk and then unlocked the trunk and took therefrom the deed in question, and shortly thereafter delivered it to Samuel M. Bowles, the grantee, who filed it for record. She testified that the deed was in the envelope in the same place in the corner of the trunk, with her machine receipt, where she had placed it when it was put into her hands for delivery to appellee.

The evidence shows, beyond all doubt, that from what the grantor did and said he intended to make an effectual delivery of the deed. In *Hawes* v. *Hawes*, 177 Ill. 409, we reiterated what had been said in substance in many previous cases, that "no special form or ceremony is necessary to constitute a sufficient delivery. It may be by acts or words, or both, but something must be said or done showing an intention that the deed shall become operative to pass the title and that the grantor loses all right of control over it. The delivery need not necessarily be made to the grantee, but may be made to another in his behalf and for his use; but it is indispensable that the grantor shall part with control over the deed and shall not retain a right to reclaim it." *Hayes* v. *Boylan*, 141 Ill. 400; *Provart* v. *Harris*, 150 id. 40; *Wilson* v. *Wilson*, 158 id. 567; *Shults* v. *Shults*, 159 id. 654.

It is contended in the case at bar that the grantor, Samuel Bowles, retained control of the deed, because after he delivered it to Miss Witherspoon she put it in his trunk to which he carried the key, and that he virtually

retained possession of the deed until his death. The argument is, that what was done after the execution and acknowledgment of the deed was all one transaction, the effect of which was that the grantor retained full control of the deed, with the right and power to recall or reclaim it at any time, according to his pleasure. So far as the question of fact is concerned, the jury and the court below have found against this contention, and we think their finding is sustained by the evidence. The evidence shows that he never did attempt to recall or reclaim the deed or to exercise any control over it whatever, except that he permitted its custodian to keep it in his locked trunk, with a paper belonging to her which she kept in the same place. His intention to carry out the instructions of his attorney and to make an effective delivery beyond his right of recall is clear. Had Miss Witherspoon placed and kept the deed in a trunk or other place of deposit belonging to her no question as to the delivery could have arisen. The question then is, does the mere fact that she put the deed in his trunk to which he carried the key, immediately upon its delivery to her, necessarily render such delivery, or alleged delivery, ineffectual? We think not. Such a fact, in connection with others, might cast suspicion upon the intention of the grantor and give rise to the conclusion that the attempted delivery was only colorable and that he had no intention of parting with the control of the deed; but in the case at bar there was no evidence whatever that he did not intend in good faith to make a complete and final delivery of the deed as an escrow, but, as before said, the evidence was that he did so intend. So far as he was concerned the act of delivery was complete, and no conditions were attached to it, except that the person to whom it was so delivered should, at his death, deliver it to the grantor. This condition was fulfilled, and we cannot say, as a matter of law, that because the custodian put and kept the deed in a receptacle belonging to

him, where he could, by the exercise of mere physical power, regain the actual possession of the instrument as against such custodian, he did not part with all dominion and control over the deed. Once parted with it was gone forever, and he could not thereafter rightfully or effectually re-assume a control which he had parted with, even if he had obtained possession of the deed; nor did he attempt to do so, but suffered the deed to remain undisturbed where Miss Witherspoon had placed it.

We are disposed to agree with the findings below that the grantor did intend to make, and did in fact make, a delivery of the instrument. The instructions of the court to the jury were in harmony with these views, and no other error is pointed out.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. Justice Magruder, dissenting:

In my opinion there was no valid delivery of the deed. The deceased directed his house-keeper to take the deed, and put it in his trunk, which was in his bed-room. As soon as she placed it in his trunk, she gave him the key to his trunk. He put the key in his vest pocket and carried it there for several months until his death. It was found in his pocket after his death. It is evident that the deed never left his possession or control. Being in his trunk in his bed-room the deed was all the time in his sight, and, having the key in his hands, he could get the deed and destroy it at any time. (*Byars* v. *Spencer*, 101 Ill. 429; *Walls* v. *Ritter*, 180 id. 616; *Hawes* v. *Hawes*, 177 id. 409; *Walter* v. *Way*, 170 id. 96; *Hayes* v. *Boylan*, 141 id. 400; *Shults Shults*, 159 id. 654; *Provart* v. *Harris*, 150 id. 40; *Wilson* v. *Wilson*, 158 id. 567).